**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ALISHA A. S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18-CV-485-TCK-JFJ |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Alisha A. S. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

## I.      General Legal Standards and Standard of Review

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, a plaintiff must provide medical evidence demonstrating an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* The Court's review is based on the record, and the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th

Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 38-year-old female, applied for Title II disability insurance benefits on July 15, 2015, alleging a disability onset date of June 26, 2015. R. 52, 181-182. Plaintiff claimed she was unable to work due to conditions including gastroparesis/delayed gastric emptying, anxiety, depression, and back pain. *See* R. 195. Plaintiff's claim for benefits was denied initially on October 1, 2015, and on reconsideration on December 7, 2015. R. 91-108. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on June 29, 2017. R. 70. The ALJ issued a decision on September 28, 2017, denying benefits and finding Plaintiff not disabled because she was able to perform past relevant work. R. 52-65. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found that Plaintiff's date last insured was December 31, 2018, and that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 26, 2015. R. 54. At step two, the ALJ found that Plaintiff had the severe impairment of gastroparesis/irritable bowel syndrome ("IBS"). *Id.* He found that Plaintiff's medically determinable impairments of headaches, overweight, lumbar degenerative disc disease, fibromyalgia, esophagitis reflux, insomnia, depression, and anxiety were non-severe. R. 54-55. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had no limitation in the area of adapting or managing oneself, and mild limitations in the three areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or

maintaining pace.  R. 56.  At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments.  R. 57.

After evaluating the objective and opinion evidence, Plaintiff's statements, and Plaintiff's husband's statements, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work as follows:

> The claimant can lift and/or carry, push and/or pull 20 pounds occasionally and 10 pounds frequently.  She can sit for 6 hours out of an 8-hour workday and stand and/or walk 6 hours of an hour [sic] workday.  The claimant cannot climb ladders, ropes, or scaffolds.  She can frequently climb stairs, balance, and bend/stoop, kneel, crouch, and crawl frequently.

R. 57.  Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform past relevant work as a medical assistant, as actually and generally performed.  R. 65.  Accordingly, the ALJ concluded Plaintiff was not disabled.

## III.   Issues

Plaintiff raises four points of error in her challenge to the denial of benefits: (1) the ALJ's RFC failed to include any nonexertional limitations resulting from Plaintiff's severe impairments; (2) the ALJ failed to consider the combined effect of all of Plaintiff's severe and non-severe impairments; (3) the ALJ failed to properly evaluate Plaintiff's subjective complaints; and (4) the ALJ erred in finding that Plaintiff could perform her past relevant work.  ECF No. 15.

## IV.   Analysis

### A.   The ALJ Reasonably Considered and Evaluated the Evidence Regarding Plaintiff's Severe Impairments

Plaintiff argues that the ALJ failed to include non-exertional limitations related to her severe gastrointestinal impairments of gastroparesis/IBS.  Plaintiff points specifically to her need to stop her duties or leave the workstation at unplanned intervals to use the restroom.  In support, Plaintiff cites to her own statements and testimony regarding her complaints of nausea, abdominal

pain, and need for frequent bathroom breaks.  R. 77-81.  Plaintiff's argument is not persuasive.

The ALJ noted Plaintiff's statements and testimony regarding her gastrointestinal difficulties and

discounted them as inconsistent with the objective medical evidence.  R. 58, 63-64.  He found

Plaintiff's gastritis/IBS was a severe impairment but that her complaints of abdominal pain and

nausea were inconsistent with the largely normal objective findings.  R. 63.  As explained below

in Part IV.D, the ALJ's consistency analysis regarding Plaintiff's statements was proper.  Plaintiff

points to no objective records in support of her complaint that frequent bathroom breaks would be

required based on her gastrointestinal impairments.

The ALJ reasonably found that the objective medical records did not support Plaintiff's

complaints that her gastrointestinal impairments were more limiting than stated in the RFC.  R.

58.  Specifically, the ALJ noted that, although Plaintiff complained of gastrointestinal problems to

her medical providers, examinations of the abdomen were largely normal, apart from intermittent

abdominal tenderness, which was typically mild.  R. 58-64.  *See* R. 281, 292, 299, 306, 406, 458,

467, 495.  The ALJ also noted that Plaintiff had reported to her physician in April 2015 that her

abdominal pain was intermittent, the problem waxed and waned, and Domperidone provided

significant relief with no episodes while on it.  R. 301.  At a physical consultative examination in

September 2015, examiner Crysten Cheatwood, D.O., observed largely normal abdominal findings

– soft, tender to palpation in right lower quadrant, no guarding or rebound tenderness, bowel

sounds heard throughout, no ascites, and no organomegaly with palpation.  R. 370.  The ALJ noted

these findings were consistent with medical observations in March 2017 of soft, normal appearing

abdomen with normal bowel sounds and no tenderness or rebound, despite Plaintiff's complaints

of abdominal pain and nausea.  R. 495.  At a January 2017 emergency room visit, Plaintiff reported

moderate mid-abdominal pain and nausea, and examination revealed mid-abdominal tenderness to

palpation and mild guarding but no rebound, with unremarkable labs and abdominal CT scan.  R. 464-470.  GI endoscopies performed in September 2014, October 2015, and March 2016 revealed generally normal findings.  R. 283, 386, 453.

Although Plaintiff's statements provide some support for her allegations of the need for frequent bathroom breaks, the issue for judicial review is whether the ALJ's decision is supported by substantial evidence, not whether Plaintiff's position is supported by substantial evidence.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g).  *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations.") (citation omitted).  The cited testimony does not indicate the RFC is unsupported by substantial evidence or that the ALJ's assessment of the medical evidence was flawed.  Plaintiff simply invites the court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172.

> **B.     The ALJ Reasonably Considered and Evaluated the Evidence Regarding the Combined Effect of Plaintiff's Physical and Mental Impairments**

Plaintiff contends that the ALJ failed to consider the combined effect of all of Plaintiff's severe and non-severe impairments, including migraine headaches, lumbar degenerative disc disease, fibromyalgia, esophagitis reflux, insomnia, depression, and anxiety.  Plaintiff focuses on the effects of her fibromyalgia and her mental impairments as grounds for reversal.

The regulations require an ALJ to "consider all of [a claimant's] medically determinable impairments . . . including [] medically determinable impairments that are not 'severe'" in assessing RFC. 20 C.F.R. § 404.1545(a)(2). The Social Security Administration requires this analysis because, "[w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or

restrictions due to other impairments – be critical to the outcome of a claim." Social Security Ruling ("SSR") 96-8p.

### 1.    Fibromyalgia/Physical Impairments

Plaintiff argues the ALJ improperly rejected imposing additional impairments based on her fibromyalgia diagnosis.  At step two, the ALJ considered fibromyalgia to be a medically determinable impairment, noting there is no "dipstick" test for the condition but the American College of Rheumatology has established that it requires pain in 11 of 18 tender points on digital palpation.  R. 55.  The ALJ found that the evidence in this case "does not reflect at any time during the relevant period the existence of the requisite number of trigger points."  R. 55, 64.

Plaintiff contends the ALJ applied an incorrect standard in evaluating fibromyalgia and failed to acknowledge that symptoms of fibromyalgia can wax and wane.  *See* SSR 12-2p. However, as Plaintiff herself acknowledges, the alternative test for fibromyalgia applies when the case record does not include a report of the results of tender-point testing, or the report does not sufficiently describe the positive tender points.  SSR 12-2p.  Here, Plaintiff did have tender-point testing, which did not at any time indicate the requisite number of positive trigger points.  R. 400, 420, 496.  Rather, Plaintiff's diagnosis was based on her subjective complaints.  *See* R. 397, 400, 496.  Moreover, it is not the diagnosis, but the resulting functional limitations that determine disability.  *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995).

In any event, the ALJ did find fibromyalgia to be medically determinable, although not as functionally limiting as Plaintiff would suggest.  R. 55.  Examinations regularly revealed full ranges of motion, no edema at times, with some tenderness, pain and spasm in the back, and some tenderness in trigger points.  *See* R. 282, 289-290, 292-293, 369-374, 406, 414, 419-420, 425-426, 431, 495-496, 537-538.  Plaintiff had a positive straight leg test on only one occasion, which the ALJ noted and discounted based on a contemporaneous MRI showing only mild disc bulging.  R.

63-64, 431, 434-435.  An x-ray performed that same month revealed no significant abnormalities.  R. 434-435.  Despite complaints of insomnia, treatment notes consistently showed she was alert and oriented.  See R. 290, 293, 370, 406, 414, 420, 426, 431, 468, 496, 538.  These objective records provide substantial evidence for the ALJ's conclusion that, despite Plaintiff's "many physical complaints," her physical limitations were consistent with the RFC.  R. 63-64.

Plaintiff alleges her documented problems of IBS, headaches, insomnia, depression, constipation, nausea, chest pain, diarrhea, anxiety, and esophagitis reflux demonstrate the severity of her fibromyalgia, arguing that her symptoms are "inextricably intertwined."  ECF No. 15 at 5.  While these conditions are documented in the record, they do not demonstrate any functional limitations that contradict the ALJ's findings.  Here, the ALJ adequately explained his reasons for finding that Plaintiff's alleged physical impairments did not impose greater exertional or non-exertional limitations on her ability to perform work-related activities than stated in the RFC, and those reasons are supported by substantial evidence in the record.  As a result, the undersigned finds no error regarding the physical RFC findings.

### 2.    Mental Impairments

Plaintiff contends the ALJ committed error in determining the mental RFC for three reasons: (1) at step two, the ALJ found "mild" limitations in three of the four "paragraph B" mental impairment criteria; (2) the ALJ improperly relied on Plaintiff's treating physician's August 2015 opinion that Plaintiff's mental impairments were not severe; and (3) the ALJ was not entitled to rely on Plaintiff's own statements that she attributed her difficulties in concentrating, remembering, and completing tasks to her physical conditions.  None of Plaintiff's arguments are availing.

First, Plaintiff argues that the ALJ's findings of "mild" mental limitations at step two conflict with his finding of no mental restrictions in the RFC.  At step two, the ALJ found that Plaintiff had mild limitations in the three "paragraph B" areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. R. 56.  However, an ALJ is not necessarily bound by his step-two findings when determining a claimant's RFC.  *See* SSR 96-8p, 1996 WL 374184, at *4; *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.").

The ALJ found Plaintiff's anxiety and depression to be medically determinable impairments, although not sufficiently severe to require functional limitations in the RFC.  R. 55, 64.  *See* R. 287, 380-382.  Plaintiff points to no part of the record to support a finding that Plaintiff's anxiety and depression caused greater limitations than the ALJ found.  By contrast, Plaintiff's mental consultative exam indicated Plaintiff was able to read, write, and comprehend; was able to follow basic, three-step instructions; had intact memory, focus, and attention; spoke with normal rate, rhythm, and tone; made good eye contact; had average intelligence and congruent social skills; and provided appropriate responses to questions regarding judgment, insight, and abstraction.  R. 382.  These results supported the ALJ's finding of no functionally limiting mental impairments.

Second, Plaintiff argues the ALJ's reliance on a treating physician's mental RFC questionnaire was inappropriate, because the opinion was contradicted by clinical observations and was "patently stale."  In August 2015, Plaintiff's primary care physician, Diane Pense, M.D., completed a mental RFC questionnaire, in which she stated that she was treating Plaintiff for

depression and anxiety, but her mental conditions did not impose more than minimal limitations. R. 287.  Dr. Pense added that her mental conditions were controlled well with medication.  *Id.*  The ALJ gave this opinion "great weight," because it was a treating physician opinion and was consistent with Plaintiff's own reports that her mental impairments did not interfere with her ability to work.  R. 59, 381 (Plaintiff reported she had some anxiety attacks but was not working due to abdominal pain, nausea, and vomiting).

Under the relevant regulations, the ALJ was required to give "good reasons" for the weight assigned to a treating physician's opinion, considering the relevant factors.   20 C.F.R. § 404.1527(c)(2).   Here, the ALJ gave good reasons for assigning great weight to Dr. Pense's opinion.   Moreover, Dr. Pense's opinion was supported by the record.   *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").   Although Plaintiff has presented as anxious and/or depressed in various clinical settings, Plaintiff points to no records contradicting Dr. Pense's opinion or indicating that Plaintiff's mental symptoms were more than minimal.   R. 353 (Plaintiff reported moderate incapacity due to dysphoric mood but no anxiety in April 2015), 363 (Plaintiff reported mild incapacity due to dysphoric mood in August 2015), R. 370 (physical consultative examiner observed Plaintiff alert and oriented x3, with congruent mood, normal affect, and non-tangential thought processes in September 2015), 382 (Plaintiff presented as "mildly anxious with full range of affect" at mental consultative exam in September 2015), 399-401 (Dr. Pense advised Plaintiff to consider hernia repair "when emotionally stable" but observed no dysphoric or nervous/anxious mood in January 2016), R. 404 (Plaintiff presented with anxiety with moderate symptoms in August 2016), R. 413 (Plaintiff reported depression and occasional anxiety in March 2016), R. 425

(Plaintiff reported increased anxiety, panic attacks, and more angry and irritable with increased stress at home in August 2016), R. 493 (Plaintiff reported depression and anxiety but denied impaired memory or suicidal thoughts in March 2017).  The ALJ appropriately relied on Dr. Pense's opinion.

Moreover, while Plaintiff's mental health treatment continued after Dr. Pense issued her opinion, Plaintiff points to no material change in her mental condition that would render Dr. Pense's August 2015 opinion "patently stale."  *Cf. Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (noting court found ALJ's reliance on "stale" opinion "troubling," where subsequent medical evidence showed material changes to Plaintiff's impairment that would cause additional exertional limitations).  The undersigned identifies no error.

Third, Plaintiff contends the ALJ improperly relied on her own statements to the mental consultative examiner that her mental conditions did not impair her ability to work.  R. 59, 60, 64, 381.  However, Plaintiff points to no objective records that contradict this statement, and Plaintiff's treatment and consultative records have consistently shown no functional impairments resulting from her anxiety and depression.  *See* R. 382, 353-355, 363, 370, 380-382, 399, 406, 495.  Plaintiff points to her own function report that she had difficulty handling stress due to anxiety.  R. 237. However, in the same function report, Plaintiff reported she had no problems with social activities, handling money, following instructions, or getting along with others.  R. 234-237.  The ALJ reasonably relied on Plaintiff's own statement in this regard, as it was consistent with the objective and opinion evidence.

## C.    The ALJ's Consistency Analysis Was Supported by Substantial Evidence

Plaintiff argues the ALJ's consistency analysis was improper.  In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity,

persistence, and limiting effects of symptoms are consistent with the objective medical evidence

and other evidence of record.  SSR 16-3p, 2016 WL 1119029, at *7.  If they are consistent, then

the ALJ "will determine that the individual's symptoms are more likely to reduce his or her

capacities to perform work-related activities."  *Id.*  If they are inconsistent, then the ALJ "will

determine that the individual's symptoms are less likely to reduce his or her capacities to perform

work-related activities."  *Id.*  Factors the ALJ should consider in determining whether a claimant's

pain is in fact disabling include the claimant's attempts to find relief and willingness to try any

treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological

disorders combine with physical problems; the claimant's daily activities; and the dosage,

effectiveness, and side effects of the claimant's medication.  *Keyes-Zachary v. Astrue*, 695 F.3d

1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §

404.1529(c)(3).[1]

    Consistency findings are "peculiarly the province of the finder of fact," and courts should

"not upset such determinations when supported by substantial evidence."  *Cowan v. Astrue*, 552

F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the

claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-

by-factor recitation of the evidence."  *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted).

"[C]ommon sense, not technical perfection, is [the reviewing court's] guide."  *Id.*

---

[1] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis.  *See* SSR 16-3p (superseding SSR 96-7p).  In practice, there is little substantive difference between a "consistency" and "credibility" analysis.  *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit).  Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

Here, Plaintiff alleges the ALJ erred by pointing out "minor" inconsistencies between her diary entries and contemporaneous medical records. R. 63. Plaintiff points to two examples. First, the ALJ noted that Plaintiff's symptom log showed nausea on February 20, 2017, but at a medical appointment on February 21, 2017, she reported she had no nausea. R. 63, 264, 482. The ALJ's notation is accurate, and this was not the only example of inconsistency he identified. For example, the ALJ also noted inconsistency between Plaintiff's July 2017 testimony of migraines three times per month and a report at a March 2017 medical appointment of migraines occurring "maybe monthly but usually not even that often." R. 63, 87, 493. The undersigned does not find this to be a minor inconsistency, when supported by other examples from the record.

Second, the ALJ noted that Plaintiff's symptom log showed nausea on March 13-14, 2017, yet a medical appointment on March 13, 2017 did not show any complaint of nausea. R. 63, 264, 493. Plaintiff argues the March 13 treatment notes in fact indicated Plaintiff reported nausea on that date. The progress notes from that visit do indicate Plaintiff reported nausea on that date, although it is not listed as a reason for her visit. At that appointment, the "Reason for Visit" section stated anxiety, insomnia, and fibromyalgia. R. 487. In addition, "chronic abdominal discomfort and nausea" are noted under the "HPI" (History of Present Illness) comments. R. 493. Under the "Review of Systems" section, Plaintiff did report abdominal pain and nausea. R. 495. However, any error in this regard is harmless. Even if the ALJ misread these progress notes regarding one date, the ALJ provided numerous other reasons for finding inconsistency between Plaintiff's subjective statements and the evidence of record. R. 63-64. *See Pickup v. Colvin*, 606 F. App'x 430, 433-34 (10th Cir. 2015) (affirming ALJ's credibility determination despite finding two of the reasons given by ALJ were not supported by substantial evidence).

13

Plaintiff further argues the ALJ improperly found inconsistency between Plaintiff's complaints and her daily activities. The ALJ stated that, despite Plaintiff's numerous complaints, she "drove, shopped, independently performed personal care, cooked, did chores, read, watched TV, did laundry, and worked in her flower bed." R. 64. *See* R. 204-211, 231-238. However, it is proper for the ALJ to consider Plaintiff's activities in evaluating her complaints. *See* SSR 16-3p, at *7 (stating that ALJ should consider claimant's daily activities as part of consistency analysis). Plaintiff contends the ALJ failed to consider the limits of the daily activities she could perform, such as driving infrequently, doing chores and gardening for short periods of time, and sometimes shopping online. However, the ALJ accurately listed Plaintiff's activities as she reported in her function reports. Although Plaintiff testified at the hearing that her activities were somewhat more limited than in her function reports, the ALJ's summary of her activities was accurate. R. 58, 64. *See* R. 75-88.

In sum, Plaintiff's consistency arguments are unavailing, and the ALJ's discussion of Plaintiff's subjective complaints and the objective evidence satisfies SSR 16-3p. The ALJ gave specific reasons for finding Plaintiff's statements regarding the severity of her symptoms to be inconsistent with the objective and opinion evidence, as well as Plaintiff's own statements regarding her activities of daily living and the severity of her impairments. R. 63-64. The ALJ reasonably concluded that the objective evidence undermined Plaintiff's allegations regarding the severity of her symptoms. *See* R. 63-64 (stating that medical records noted routinely normal physical examinations, which were inconsistent with Plaintiff's allegations of functional limitations. *See Megginson v. Astrue*, 489 F. App'x 260, 263 (10th Cir. 2012) (routinely normal clinical examination findings undermined claimant's allegations). The court may not re-weigh the evidence, as Plaintiff invites the court to do. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489

14

F.3d 1080, 1084 (10th Cir. 2007) (the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (quotation and alterations omitted).

### D.    The ALJ Reasonably Found Plaintiff Could Perform Past Relevant Work

Plaintiff contends substantial evidence does not support the ALJ's step-four determination that Plaintiff could perform her past relevant work as a medical assistant, as actually and generally performed. R. 65.  The step four analysis consists of three phases.  In the first phase, the ALJ must evaluate the claimant's RFC; in the second phase, "he must determine the physical and mental demands of the claimant's past relevant work"; and in the third phase, he must "determine[] whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  "At each of these phases, the ALJ must make specific findings." *Id.*  "Past relevant work" is defined as the claimant's ability to perform either (1) the "actual functional demands and job duties of a particular past relevant job"; or (2) the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Andrade v. Sec'y of Health & Human Servs.,* 985 F.2d 1045, 1050 (10th Cir. 1993) (quoting SSR 82-61) (quotation marks omitted).  The burden of proving disability remains with the claimant at step four; however, the ALJ has a duty "of inquiry and factual development." *Henrie v. United States Dep't of Health & Human Servs.,* 13 F.3d 359, 361 (10th Cir. 1993).

First, Plaintiff argues that the ALJ failed to account for her "mild" mental limitations in three of the four "paragraph B" mental criteria.  *See* R. 56.  Plaintiff contends these mental impairments are incompatible with the ability to perform skilled work such as the medical assistant job.  However, Plaintiff's RFC did not include any mental limitations that would render her abilities incompatible with the demands of skilled work.  *See* R. 57.  As explained above in Part

15

IV.B.2, the ALJ was not bound by his step-two finding of some mild mental limitations in determining the RFC, and his mental RFC was supported by substantial evidence.  Plaintiff's argument fails.

Second, Plaintiff argues the ALJ failed to develop the record as to Plaintiff's precise job duties, and the ALJ failed to show he considered all the duties of her past relevant work.  At the hearing, Plaintiff testified that her medical assistant job included duties such as "prepping" patients and taking blood pressure, and that she was required to carry up to ten pounds and regularly stay on her feet.  R. 76.  The VE then testified that a hypothetical person with Plaintiff's background and RFC could return to past work as a medical assistant, DOT #079.362-010, and that the position is light exertion with Specific Vocational Preparation ("SVP") of 6.  R. 89.  The ALJ noted the VE's testimony and found that it was consistent with the information contained in the DOT.  The ALJ's conclusions were appropriate, because the ALJ is permitted to rely on the VE's testimony at phases two and three of the step-four analysis.  *See Adcock v. Commissioner, SSA*, 748 F. App'x 842, 847 (10th Cir. 2018) (holding that ALJ may approvingly cite and rely on VE's testimony in support of his step-four findings at phases two and three).

In addition, because the ALJ stated that Plaintiff could return to the medical assistant job "as actually and generally performed," it was not necessary for Plaintiff to describe her past work in greater detail than she did.  R. 65.  It is the claimant's burden to prove she cannot return to either her particular former job or the job as generally performed in the national economy.  *See Andrade*, 985 F.2d at 1051; *Dumas v. Colvin*, 585 F. App'x 958, 960 (10th Cir. 2014) (affirming district court's ruling that, "even if the ALJ erred in determining Mr. Dumas retained the RFC for the line attendant job as he had actually performed it, any error was harmless because the ALJ also determined that Mr. Dumas could return to the line attendant job as the job is generally performed

in the national economy.").  The ALJ satisfied his duty to make an "informed comparison between past work requirements and the claimant's functional limitations" as part of the step-four determination.  *James v. Chater*, 96 F.3d 1341, 1342 n.2 (10th Cir. 1996), *overruled on other grounds by Sims v. Apfel,* 530 U.S. 103 (2000).

Third, Plaintiff argues the ALJ's stated reasons for finding she could perform the mental demands of her skilled past relevant work were invalid.  Plaintiff points to the following findings: (1) Plaintiff's ability to do laundry showed she could sequence multi-step activities; (2) Plaintiff's ability to describe her past work duties at the hearing showed she could describe work activities to someone else; and (3) Plaintiff's positive performance during a psychological consultative exam indicated her mental impairments were minimal.  R. 56, 63.  However, the ALJ did not indicate that these activities showed Plaintiff could perform skilled work.  Rather, the ALJ cited these findings as evidence that Plaintiff's mental impairments did not cause functional limitations.  As explained above, this conclusion was supported by substantial evidence.  *See* R. 64 (summarizing Plaintiff's mental health allegations and concluding "there would be no limitations due to her anxiety and depression").  Plaintiff points to no evidence indicating that she would be unable to perform skilled work.  The undersigned concludes that ALJ committed no error in the step-four evaluation.

### E.   The ALJ Did Not Err By Failing to Obtain a Consultative Exam

"The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir.1993)).  "This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented."  *Id.*  "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the

claimant's own version of those facts."  The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning;" instead, the "standard is one of reasonable good judgment."  *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

An ALJ may elect to develop the record by obtaining a CE.  *See* 20 C.F.R. § 404.1519a (explaining that "[w]e may purchase a [CE] to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim" and providing examples of instances that may require a CE); 20 C.F.R. § 404.1512(b)(2) ("Generally, we will not request a [CE] until we have made every reasonable effort to obtain evidence from your own medical sources.").  A CE "is often required" where (1) there is a direct conflict in the medical evidence requiring resolution, (2) the medical evidence in the record is inconclusive, or (3) additional tests are required to explain a diagnosis already contained in the record.  *Hawkins*, 113 F.3d at 1166.  The Tenth Circuit has held that an "ALJ should order a [CE] when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the [CE] could reasonably be expected to be of material assistance in resolving the issue of disability."  *Id.* at 1169.  Generally, an ALJ has "broad latitude in ordering consultative examinations."  *Id.* at 1166.

The Court finds the ALJ did not commit error by failing to obtain a physical CE to assess Plaintiff's pain and physical limitations flowing from her neuropathy.  The single muscle strength test cited by Plaintiff, among the numerous medical records supporting the RFC discussed above, does not constitute the type of material inconsistency that necessitates a CE.  Nor are the medical records incomplete or inconclusive, as noted by the ALJ herself during her exchange with counsel during the hearing.  R. 81-82.  Contrary to Plaintiff's arguments, the ALJ did not need a specific "RFC" opinion from a CE or other medical professional to assess Plaintiff's functional limitations.

*See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("The ALJ, not a physician, is charged with determining a claimant's RFC."); 20 C.F.R. § 404.1527(d)(2) (explaining that, while an ALJ considers medical opinions in assessing RFC, the final responsibility for determining an RFC is reserved to the ALJ).  The burden to fully develop the record was met in this case, and the ALJ had more than sufficient information to determine Plaintiff's RFC based on treatment records, agency doctors' opinions, and other non-medical evidence.  *See generally Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with CE because "sufficient information existed" for ALJ to make disability determination). While the physical RFC was particularly important in this case, due to Plaintiff's advanced age and the potential for her to be found disabled under a more restrictive physical RFC, this is not an adequate reason to reweigh the evidence or remand an ALJ's decision that is thorough, well-reasoned, and supported by substantial evidence.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation.  Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by January 3, 2020.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

determine de novo any part of the magistrate judge's disposition that has been
properly objected to.   The district judge may accept, reject, or modify the
recommended disposition; receive further evidence; or return the matter to the
magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1).   The Tenth Circuit has adopted a "firm waiver rule" which

"provides that the failure to make timely objections to the magistrate's findings or

recommendations waives appellate review of both factual and legal questions."   *United States v.*

*One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*,

950 F.2d 656, 659 (10th Cir. 1991)).   Only a timely specific objection will preserve an issue for

*de novo* review by the district court or for appellate review.

        **SUBMITTED** this 20th day of December, 2019.


                                        JODI F. JAYNE, MAGISTRATE JUDGE
                                        **UNITED STATES DISTRICT COURT**